Good morning, Your Honor. Good morning. May it please the Court, I'd like to reserve four minutes. Four minutes? Four minutes? Okay. Mark Patenaude on behalf of the appellant, Mr. Carlos, we're here today appealing the granting of a motion for summary judgment by the District Court and an Unfair Debt Collection Practices Act by allegations. The issues decided by the District Court were twofold. The first one was whether or not defendant's actions in filing a collection lawsuit was barred by the applicable statute of limitations. The parties didn't dispute that the applicable statute of limitations was governed by Virginia law rather than Oregon law. It's a Capital One credit card account. One of the primary determinations about how long the statute of limitations applies in whether or not a contract is written or unwritten for statute of limitations purposes. The District Court found that the Capital One credit card agreement was a written contract. Appellant's position is that that was error. The contract was an oral contract, that there's no signed written contract adopting and incorporating all of the terms and conditions of Mr. Carlos's Capital One account. They seem to rely on an electronic signature. Well, they seem to rely on three of them in their answering brief. It was essentially one at the District Court level, and the District Court didn't say that they were what electronic signature it was relying on. There's some evidence of a – Well, they point to their internal screenshots. Correct. On their end. Correct. Of the one where you really have to look carefully. You look very closely. Right. It took me several times to spot it, and you see the checkmark. Right. And Plaintiff, which was I think highlighted more in our reply brief, that we don't believe that that's admissible evidence of the signature under as a business record because it's actually not the signature from Mr. Carlos. It's a record of Capital One saying that Mr. Carlos at some point in time signed an online application. It's not the electronic signature itself. So – Well, I don't understand what you mean by that because electronic signature is the checkbox, isn't it? Well, yes, but it's generally the checkbox that says here are the terms you're agreeing on. If you agree, check this box. And they should be able to print out that record that shows Mr. Carlos checked that box. What they printed out and offered was a secondary record that that occurred. We don't have the screenshots from what he was looking at. Exactly. As he was answering. Do I have that right? Yes. That's correct. That's what I mean. What you have is you have the secondary record that Capital One tracked that says – and if you look at the Kime Declaration, it says he must have done this, he must have seen this, but it doesn't show you what he saw. And the screenshot is not of what he saw and the box he checked. It's of a record of a checkbox by Capital One that says he checked that box. Well, let me just ask you this. I know he says he didn't sign anything or didn't check anything, but all the evidence suggests that no account could be opened without these things. You have what you call secondary evidence. The question on summary judgment is I don't find his statement, I didn't sign anything because I don't remember it, to be reasonably to raise an issue of fact. It's a self-serving statement and you have all the procedures on the other records. So I guess I'm having some trouble given, you know, Virginia's very specific statutes about electronic signatures, et cetera, seeing that his statement constitutes a reasonable, you know, interpretation of the facts. So it's not his statements that's the problem initially. The first problem is whether there's evidence of a signature that's admissible. So the first thing the Court needs to do is determine that the Capital One record is admissible evidence that Mr. Carlos signed something. Then the second issue is one of the things you pointed out is that Capital One required him to sign something, and that's not necessarily true. He could also apply by telephone. So, and I don't think there's any evidence that applying by telephone would necessarily constitute an electronic signature. Did he make an allegation that he applied by telephone? He does not make that. Okay. We don't dispute. Okay. Well, let's just throw that out then because that muddies the water. Well, I understand. I thought, I thought Your Honor was saying that he was required to sign something in order to apply. But when we take, so the first issue is whether or not there's admissible evidence that Mr. Carlos signed. And then the second issue is when he signed the application, what was he agreeing and what was the contract at that time? And when he signed that application, his credit card, the offer hadn't been accepted. There is no contract. All he's really signing there, even if you accept that he signed something, is that he's applying for Capital One to issue him credit. It doesn't say I'm going to be bound by all these terms or I know what these terms are, nor does it reference what those, all the terms, if Capital One decides that he's going to issue, they're going to issue him a credit card, what those terms are going to be. What it says is I'm applying. You can approve me or not approve. And it says I agree I'm bound by the terms of the offer, which is the offer to apply. And this is one of the things that was decided in California in a slightly different context when a cardholder said Capital One promised me when I applied a 6.99% card and then they changed it. And he said they breached that agreement because they promised me a card at 6.99%. And what the Court said in Rubio was that application is not an enforceable agreement. So even if he signed that application, it wasn't an agreement at that time. It doesn't incorporate all the other terms. At most what it says is if I'm approved, you're going to go ahead and send me some terms under a customer agreement and I agree to be bound by those terms. It doesn't say what those terms are, nor does it form a binding contract. And so what Defendant tried to do here is they tried to take this signature, which was really a signature saying, okay, I'm going to apply for your contract. So even if you get to the point where that's a signature, I'm going to apply for you to approve me. And then they're trying to say, well, that signature means that this has become a written contract once Capital One decides to approve it. So you have a signature that's offered for a different purpose, that's intended for a different purpose, that's being converted at some point later in time to show that we had a written contract the entire time, when that's not what the application, even assuming it was signed, was for. It was to apply for the credit that Capital One may or may not have gotten. And so then the question becomes, when did that become an agreement? That became an agreement. Capital One says, okay, we've approved you. It's still not an agreement, because Mr. Carlos had the right to reject if he didn't like the terms that they decided to approve him on. They approve him. There's no requirement that in order to accept. I mean, he had a right to reject. He just wouldn't use the credit card, right? Correct. And there's no agreement. But that's not what he did. No, it's not what he did. But we're not contending that there wasn't an agreement to use a credit card. The contention is whether or not it's a written or an unwritten contract. Right. We're not contending that he didn't agree to use the credit card. He did agree to use the credit card. The only issue in that respect is whether it's written or unwritten for the statute of limitations purposes. Right. And the fact that he agreed, if he agreed by use, that would be an implied agreement through your statute of limitations. If they required him to say, in order, here, we're going to offer you, we're approving your application, this is what you're offering, in order to accept our offer or our approval, sign and return this. So let me ask you this. So a bottom for your, on this, whether it's a written or unwritten contract, from your perspective, it's that there's a tribal issue of fact? Is that correct? At a minimum, yeah. I mean, I think there's a dearth of evidence that he signed. How do you respond to Judge McKeown's point or concern, this is just nothing more than a self-serving declaration or statement? His deposition was taken, right? Right. His deposition and what he said. Because he didn't remember anything. Right. I think that that doesn't satisfy the defendant's burden to actually produce the signature, number one. And number two, it doesn't answer the question as to what his intent was in signing that. And Capital One's own records don't disclose that, because, again, it's the offer. At a minimum, that would be a factual question as to determine, a jury to determine whether or not signing the application, the parties intended it to enter into a binding contract, a binding written contract subject to the 5-year statute of limitations. That would likely be a question of fact all by itself. The second thing that defendants argue is that when he got the card, he activated the card by calling in a number. And they claim that that is evidence of a written contract or evidence of a signed contract. They haven't provided any support to show that making a phone call would constitute an electronic signature or that the intent behind the call was to do anything other than activate the card. There's part of the Electronic Signatures Act is that you're signing and intending to be bound by something. All that Capital One has produced is said, here's your card, call this number to begin using it now. Okay. You call the number. And now, some number of years later, well, that constitutes a signature, too. There's not even any evidence as to how he activated the card or how he input that information. The third issue is the claim that by making payments, that constituted writing or signing the back of the card constituted writing, a signed written agreement. There's no evidence in the record that there was any intent by either party to do that. He signed the back of the card. Mr. Carlos said that he did that for security purposes. They don't have the back of the card at issue here that says I'm signing here and I'm going to agree to be bound. And it's not our burden to prove that. The next issue I want to address briefly was the tolling issue. The tolling issue constitutes a couple of things. Payments by themselves don't constitute tolling. And in our opening brief, we cited a case directly on point where somebody made payments for years and years and years, and that did not constitute tolling. So none of the payments that the Court found constituted tolling. The same thing with the bond. The third party payments? Even the third party payments. They wouldn't. Why would they? If I make payments, does that constitute tolling? No. Third party payments wouldn't. And what the Court actually found to get around that was they said, well, they're voluntary agreement to suspend or to not sue constituted tolling. And there's nothing in Virginia law that says a forbearance, a voluntary forbearance by the creditor tolls the statute of limitations. What tolls the statute of limitations is something signed by the debtor saying I'm agreeing to toll the statute of limitations or a written promise to pay that references the exact debt and that it is past the statute of limitations. Well, go ahead. The payment itself doesn't constitute that. The second tolling event that the Court found was the first lawsuit. And the issue on that is relatively straightforward. There's no dispute what happened is it was dismissed without prejudice, which means they could file again. But there was actually a decision on that particular case. And what Virginia law says is that if you filed a suit and there's not a decision on the merits, that that tolls. Here there was a decision on the merits that never got filed with the Court. And the question becomes whether or not the fact that there was a decision on the merits would toll. Defendants need both of those tolling events plus 60 days in order to get their suit timely. What about the request for verification of the debt? There's no – they've cited that no authority to say that there was a request for verification would constitute a tolling event, first of all. Second of all, Capital I is not prevented from doing anything. Third, filing a lawsuit is not a communication. You can file a lawsuit before you send out your first communication. So the fact that a debtor says I want to verify the debt when a creditor decides or a collector decides I'm going to send you a letter first rather than sue, they could have just filed a lawsuit. That's not a communication. Do you want to reserve your remaining time? I will reserve. Thank you. Good morning, Your Honors, and may it please the Court. My name is Kelly Hudepohl. I represent Defendant Appellee Patton Dowden-Felix. Defendant asks this Court to affirm the lower court's rulings and hold, first, that the 2013 lawsuit filed to collect Mr. Carlos's defaulted Capital I credit card debt was timely filed under the Virginia statute of limitations, and, second, the defendant did not violate the FDCPA by pleading a quantum merit claim in the alternative to the breach of contract claim. I'd like to take the statute of limitations question first and begin by explaining why Mr. Carlos's Capital I contract is governed by Virginia's five-year statute of limitations. I'd then like to address the events that occurred after Mr. Carlos defaulted on his contract that told the statute of limitations. But at the outset, it is important to acknowledge a procedural difference in this case and most cases that involve the statute of limitations question. Here, it is not an affirmative defense. It is not an element for defendant to plead and prove. It is an essential element of plaintiff's claim. Plaintiff would have the burden of persuasion at trial on this issue and had the burden of production on summary judgment. My esteemed colleague just mentioned that the dearth of evidence precludes this Court from finding in defendant's favor, but it's just the contrary. A dearth of evidence that would allow the Court to determine one way or another with certainty means that plaintiff failed to meet its needs. But we don't, you know, you don't find facts on summary judgment. That is correct, Your Honor. However, you. A fact-finding exercise on our part. That is correct. But there must be facts from which a conclusion of law can be drawn. Correct. And in this case, defendant. We have to say there are no tribal issues. There are no material tribal issues of facts. Yes, Your Honor. That is defendant's position. The facts are undisputed. Those facts that are in the record are. So where is his. Where is the contract? Where is the written contract? What makes up the written contract that qualifies it under Virginia law as a written contract? It would appear, Your Honor, that Mr. Carlos destroyed that contract. I don't say that to imply any. That wasn't my question. Yes, Your Honor. You say it's a written contract. Yes, Your Honor. Okay. Show me how it's a written contract that qualifies with. It qualifies as a written contract because plaintiff concedes every single material term of this contract was in writing and provided to Mr. Carlos prior to the time he activated his account. Plaintiff concedes that point. He refers to the Capital I credit card contract as an interstellar space rocket compared to the ox cart of common law contracts for the very reason that there is. Let's just get down to the heart of it. Yes, Your Honor. Which is the document that has his signature that incorporates all the other obligations of the contract? Just show me where that is. The cardholder agreement, Your Honor, in the very first paragraph references every document that was part of the application. That's the solicitation agreement? No, Your Honor. That's the cardholder agreement. That's the cardholder agreement that was mailed to Mr. Carlos after he electronically applied for this account, included with that cardholder agreement, and this is undisputed. Oh, the cardholder. I'm sorry, I missed what you were saying. Cardholder agreement. Yes. And that single document refers to every other document in the process. Okay. Now, did he sign that document? He did, electronically, Your Honor. They sent it to him. They did, yes. And then someplace he signed it. Electronically, yes, Your Honor. Okay. Where did he sign it? He signed it by using Capital One's automated telephone system to enter personal information sufficient to identify himself, and then also to enter the. . . Was he told that by entering on the telephone system that that was his signature and he was thereby agreeing to everything? That information is not part of the record, Your Honor. Why not? Plaintiff, to my knowledge, never sought that information from Capital One. Why didn't Capital One put the information? Your Honor, Capital One is not a party to this case. The parties to this case are Capital One's trial lawyer, Pat Nowdon-Felix, in the State Court collection case. Right. Who is never a party to this contract. No, but we're trying to. . . Okay. It doesn't matter who's. . . What is the contract? That's all we're trying to figure out, okay? So I find his position preposterous, okay? But he may have created a factual issue, and he might get a chance to show that the Capital One people were preposterous. So the question is, is there a factual issue? There is not, Your Honor. Okay. So your position is that he needs to come forward on the statute of limitations. He has the burden of going forward, in your view, under Virginia law. Yes, Your Honor, and that defendant has submitted sufficient evidence to create a genuine issue of material fact. So, again, if we step back in time. . . Wait a minute. Sure, go on. Yes, Your Honor. That's based on what? That's based upon the assumption that there's a written or oral contract. Not the assumption, Your Honor. The evidence that shows there's a written contract. Going back to 2005, the following are undisputed about the state of the contract in 2005. First, Capital One mailed a solicitation. That solicitation included a number of terms and conditions that would indeed govern any subsequent contract. Mr. Carlos received that solicitation. He used a code from that solicitation to log into Capital One's website and apply for the card. That is an offer. Rubio says that the contract is not consummated when the application is submitted. It says nothing about what happens when the application is approved. And, in fact, Rubio stands for the proposition that the application documents when they refer to the cardholder agreement, which the solicitation offer that was mailed in this case does, and Alexandra Keim, based on personal, her own personal knowledge, testified was also available on the website. Ms. Keim's knowledge is personal knowledge. But she wasn't around at the time that he would have applied. She was not with Mr. Carlos, but that is the case. Was she even employed? Was she even in charge of this recordkeeping system at the time he applied? My understanding is she does, in fact, have personal knowledge of what was on their website at the time that Mr. Carlos applied. Okay. Let's just keep interrupting. Let's get the documents. Yes, Your Honor. You have a solicitation with the terms and conditions. You said he received it. He had to have a code from that in order to log in. That's correct. He logged in. That's correct. And then is that, Mr. Passanati points out that there's no real primary evidence. You only have the secondary evidence. Does that relate to after he had the code to log in and the approval, or where does that come in? That is what happened after he logged into the website. Then you get that screenshot that we have on the record. I beg your pardon? You have then the screenshot. Yes. The screenshot is merely Capital One's evidence that the process occurred. Virginia law defines a signature as an electronic process that is logically associated to a record and manifests an intent to sign. An intent to sign is an intent to agree or to authenticate. That's Black's Law Dictionary. And there's no question Mr. Carlos testified at deposition that when he logged into that website, he entered his name, his Social Security number, his birth date, and other personal information about himself for the purpose of authenticating an application for credit. He then affirmatively clicked submit or clicked apply. There was a button. He acknowledges. He had to click. And is there testimony that the process is such that if you don't click the I agree, you can't submit? And that's a second step in the process, actually, Your Honor. First, there's a checkbox acknowledging that you've read the initial disclosures. Then you click submit. Regardless, Alexander Kimes' testimony is that we know he clicked that box acknowledging he reviewed the important disclosures. And that's what's manifested by the box signed in the screenshot. But that's not the entirety of the electronics. Okay. Keep going. Well, I'm going to stop you right there, though, before you go on to the next step. Yes, Your Honor. There's no evidence, though, of what he was actually looking at on the screen as he was entering this information. There is no screenshot. That is correct. It appears that the original documents are not available. But it's undisputed that the information on that website was the same as was in the mailed solicitation, that they were the same terms and conditions. And, again, it is undisputed. Okay. So there's no dispute that what he got in the mail was the same as on the website, but we don't have the website. We don't have the website. So then they send him to go to the next step, as Judge McKeown is asking. Yes. Then he clicks apply. And that is the consummation of the process. That is the electronic signature. When he clicks apply, thereby instituting an electronic process that goes to Capital I with his personal information and his deliberate intent that Capital I treat that as his application for credit. So that is the first signature. Then Capital I mails him a packet. That packet includes the customer agreement, which was referenced in the application both on the website, according to Alexandra Keim, I believe, and also as part of the mailed solicitation. That the customer agreement was referenced there, and the mailed solicitation referred to the website application as a reply to the mail solicitation. So it is incorporated in that electronic application as well. That packet of information that was subsequently mailed included, as I said, the customer agreement. It included a physical credit card. And it included instructions to activate the card so that it could be used. Plaintiff makes the argument that Capital I doesn't require any kind of a signature to use this. But to the contrary, Capital I requires the use of an electronic process to authenticate the recipient of the packet of information and activate that card. But I also thought one of his arguments, which, you know, seems to have some legs, is to get between the cardholder agreement, does activating the — how do you know that activating the card means I agree to the cardholder agreement? It's disingenuous to claim anything other than that. The information — Why so? I don't think — what's the — you know, every time you get a credit card, you have to hit one of the — you have to either call or nowadays you can go online and you say you put in this information that you received the card. But you can't — I don't understand that to be that I'm signing, you know — I've already signed it before, but, I mean, when you do it — There are two — When you get that card, you don't normally think that you're signing to authenticate yourself. There are two elements to that. The first is that Virginia looks at objective manifestation, not subjective intent. And the second element is that that card arrived with the customer agreement. Using an electronic process to authenticate it objectively manifests that you received the information with the card and are agreeing to the terms that govern the card. They do not indicate that you are not agreeing to the contract and yet still somehow reserving the right to use the card. But does it say, you know, when you authenticate — when you authenticate your receipt of the card, that you're agreeing — you're agreeing to all the terms and conditions? At least the ones that were included in the envelope with the card, yes. Under Virginia law, where documents are presented as part of a single packet or transaction, when you sign one document, the signature operates as to all of them. No. So does the document — when he received the card and it had this additional agreement in the packet went to him? Yes. Does that agreement say that when you authenticate, when you activate the card, that means you're agreeing to everything in the agreement? The cardholder agreement I don't believe states that in so many terms. What we don't know is what that instruction sheet said. Nonetheless, as a matter of law in Virginia, and that's what's important, it's as a matter of law, where you receive a single packet of information and you affix a signature to one of those documents, you have signed all of the documents. And here your signature is when he calls? Both when he calls and then also the fact that he did physically sign the credit card, and that's from his testimony. He testified that he signed the card. So I want to try to understand what's at stake here in the practical status of the case. So Pat Nudes sues Mr. Carlos on the credit card debt, right? Yes. And how much is that? The credit card debt was about $3,500 was the amount alleged. Okay. We've got $3,500. And so at this point you've been to the district court. Yes, Your Honor. Now you're in the Court of Appeals. Yes, Your Honor. We've had all this briefing. $3,500 is still on the table. Has there been any effort to process this case through mediation? Yes, Your Honor. Through the Ninth Circuit mediation? Yes, Your Honor. All right. I can also tell you, Your Honor, after plaintiff in the district, excuse me, in the trial courts of Oregon raised the statute of limitations, Capital One voluntarily dismissed that case with prejudice. Plaintiff then brought this FDCPA action with four counts. Three counts, defendants prevailed on summary judgment, and the fourth count was resolved by offer of judgment. There is no more outstanding debt, and plaintiff has been given affirmative damages in this case along with his reasonable attorney fees for pursuing the one successful count. So what is left then? Plaintiff, the attorney fees related to the other claims that were not awarded by the judge, and plaintiff's desire to continue on the statute of limitations and quantum merit claim. I see my time is expiring. I do ask the court affirm the trial court's rulings on both quantum merit and the statute of limitations. Thank you, Your Honors. Thank you. I want to start my reply time with the statement about we have the burden of proof. The burden of proof would be met simply by, even if you use the district court's time for when there was a default, was March 2007, and the suit was filed on 7-19-2013. That's more than five years after. The only way a defendant gets past that is tolling, which would be their defense. I want to address a little bit about the signing before my time is up. The telephone call, there's no evidence, there's no evidence, and there's no evidence that the telephone call was to do anything other than activate the card. And I think Your Honor hit the nail on the head to a certain extent that, look, even if we assume that the signing of the application occurred, there's no evidence to suggest that activating the card means I'm signing the agreement. We're not saying that Mr. Carlos didn't agree. We're saying he didn't sign anything. It was not a written and concluded contract subject to the three-year statute of limitations because it was an implied in contract, applied in fact contract that he was obligated on. Okay. Thank you. Thank you. Thank you both for the argument this morning. Carlos v. Pattennewt is submitted.
judges: Tashima, McKeown, Paez